# PELTON GRAHAM LLC

111 BROADWAY, SUITE 1503, NEW YORK, NEW YORK 10006
T 212.385.9700 ‖ F 212.385.0800 ‖ WWW.PELTONGRAHAM.COM

**BRENT E. PELTON, ESQ.**  JULY 26, 2016
PELTON@PELTONGRAHAM.COM

**VIA ECF**

Honorable Robert M. Levy
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re: *Flores, et al. v. Five Star Carting, LLC, et al.*
      Civil Action No. 14 Civ. 2970 (RML)

Dear Judge Levy:

  This letter, drafted by the named Plaintiffs Marco Antonio Flores, Francisco Loreto and Oscar Tudon individually and on behalf of and as agents for the Opt-In Plaintiffs as that term is hereinafter defined (the named Plaintiffs and Opt-In Plaintiffs are hereinafter collectively referred to as the "Plaintiffs") and Five Star Carting, LLC, Five Star Carting, Inc., Workforce Cleaning Services, LLC, (collectively the "Company Defendants") Anthony Tristani and Nino Tristani (the "Individual Defendant" and, collectively with the Company Defendants, the "Defendants") is submitted in accordance with Your Honor's June 20, 2016 Order to file a motion for approval of the settlement, attaching a copy of the settlement agreement in the above-referenced action (the "Action").

## I. Introduction

  Plaintiff Marco Antonio Flores commenced this Action by filing a Collective and Class Action Complaint on behalf of himself and similarly situated employees of Defendants on May 9, 2014 seeking unpaid overtime premium pay pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* and the New York Labor Law ("NYLL") § 650 *et seq.*, unpaid prevailing wages owed to him pursuant to the New York common law, as well as damages for wage notice and wage statement violations pursuant to the NYLL. (See Complaint, Dkt. No. 1; an Amended Complaint, Dkt. No. 11 (adding Akeam Dukes as a named plaintiff); and, a Second Amended Complaint, Dkt. No. 49 (removing Akeam Dukes and adding Antonio Santos and Oscar Tudon as named plaintiffs). Plaintiffs worked as demolition laborers and driver-helpers for Defendants' demolition and garbage carting companies. (Dkt. No. 49). On October 30, 2015, Plaintiffs' motion for collective action certification was granted, and Plaintiffs were authorized to send notice to Defendants' current and former demolition laborers, general laborers, foremen, waste removal workers and garbage collection helpers (Dkt. No. 51) As a result, sixty-one (61) individuals signed and filed

consents to join the Action (the "Opt-In Plaintiffs"). On December 15, 2015, Defendants filed a motion to dismiss for failure to join required parties and, in the alternative, a motion to join required parties, both of which Plaintiffs opposed and both of which the Court denied on March 24, 2016. (Dkt. Nos. 62, 84, 120).

On March 30, 2016, Your Honor held a settlement conference where Your Honor directed Plaintiffs to exchange a settlement demand. The parties exchanged a significant amount of document discovery with the Company Defendants providing Plaintiffs thousands of pages of time and pay records for the Plaintiffs. Utilizing these records and based on extensive conversations with Plaintiffs, Plaintiffs' counsel assembled a comprehensive damages analysis which was exchanged with Defendants for settlement purposes only. The parties made significant progress toward settlement over the next couple of months and the parties discussed their efforts to settle the matter in telephone conferenced with Your Honor on May 10 and June 9, 2016. On June 20, 2016, the parties attended an in-person settlement conference with Your Honor, where a settlement was reached and the terms were placed on the record. The parties have consented to jurisdiction by Your Honor for all purposes. (Dkt. No. 122)

## II. The Settlement Accounts for Litigation Risk and Compensates Plaintiff for Substantial Damages

Throughout this litigation, the parties have had two (2) major points of contention: (1) Plaintiffs' allegations regarding Defendants' failure to pay Plaintiffs all hourly wages and overtime wages; and (2) Plaintiffs' allegations that the Defendants were jointly and severally liable for Plaintiffs' alleged damages.

### A. Wage and Overtime Claims

The wage claims were based on Plaintiffs' allegations that they were paid straight-time for all hours worked, including hours worked in excess of forty (40) in a given workweek and that they were not paid for all hours worked. Defendants denied these allegations and disputed the length of employment and number of hours worked as alleged by Plaintiffs. Moreover, Defendants asserted that all Plaintiffs and employees are properly paid for the hours worked.

Throughout the litigation, Defendants produced certain time and payroll records, as well as other employment materials for the Plaintiffs, which indicated that employees were paid for all hours worked and overtime premiums for all hours worked in excess of forty (40) hours per week. While Plaintiffs would dispute the accuracy and completeness of these records at trial, Plaintiffs recognize that such documents could potentially limit the amount of damages Plaintiffs would recover at trial if a factfinder credited Defendants' materials.

### B. Liability

Moreover, Defendants disputed that they were liable for wage claims for laborers and foremen during the time period they allege that they were paid by PAH Services Inc., TAH Cleaning Services, Inc. and/or Paul Hidalgo (collectively, the "Hidalgo Companies"). Defendants' claims that they are not responsible for unpaid wages or overtime wages during the time period

that they allege Plaintiffs were paid by the Hidalgo Companies are concerning because the majority of Plaintiffs' damages arose during this period.

Due to the fact-intensive nature of these inquiries, it is likely that substantive answers to these disputed issues would not be resolved until after significant additional discovery and motions practice, if not a trial. The parties would need to engage in extensive discovery, including formal document discovery and depositions of the Plaintiffs and Defendants. Plaintiffs would move for collective and class certification. Defendants would oppose any motion for class certification and would likely seek de-certification of any certification granted by the Court. Finally, both parties would likely seek dispositive motions at the end of discovery.

### III. Settlement Terms

As set forth in the attached Settlement Agreement, the parties have agreed to settle this action for a total settlement amount of $400,000.00 (the "Settlement Amount"). Of that amount, $133,832.00 is payable to Plaintiffs' counsel, representing $2,169.42 in expenses for counsel's costs for filing and service of the complaint and one-third (33.33%) of the Settlement Amount after subtracting expenses. The remaining $265,220.52 is payable directly to Plaintiffs (the "Net Settlement Amount"). The allocation of the Net Settlement Amount was calculated based on each Plaintiffs' claimed length of employment for Defendants and damages amount. The damages allocated to each Plaintiff represents a significant percentage of the unpaid overtime to which Plaintiffs claim they are entitled for their work during the relevant time period.

In light of the litigation risks outlined above regarding the dates of employment, number of hours worked by Plaintiffs, the alleged employment of Plaintiffs by the Hidalgo companies and the suitability of class and collective treatment, the parties believe that this settlement is fair and represents a significant portion of the amount that Plaintiffs could recover at trial. Although there is a possibility that Plaintiffs could recover higher damages if the case proceeded to trial, the risks and uncertainties are substantial particularly in view of Defendants' adamant denial of any wrongdoing and/or liability to Plaintiffs. In view of the amount of time, attorneys' fees and costs that would have to be expended in bringing this action to trial and the length of such a trial, Defendants also believe that this settlement is appropriate. Plaintiffs will be able to recover settlement funds much more quickly than a trial judgment, since the parties would need to take depositions, and brief dispositive motions and motions on class treatment before trial could commence.

The attorneys' fee award, representing costs and one-third of the net Settlement Amount, is consistent with both the retainer signed by the Plaintiffs and general practice in this Circuit. The attorneys for the parties litigated this case at all times at an arms-length basis, exchanged formal and informal discovery, worked through discovery disputes, researched, drafted and filed motions for 216(b) collective action certification and to dismiss, sent out notice to potential collective action plaintiffs and negotiated resolution at length before reaching the settlement. Accordingly, Plaintiffs submit that the attorneys' fee component of the settlement is fair and reasonable.

\*    \*    \*

As demonstrated above, the settlement is a result of substantial negotiations and compromise by both parties. The parties believe that the settlement is completely fair, reasonable, and adequate to the Plaintiffs and should be approved.

We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel for the parties should you have any questions regarding this submission.

Respectfully submitted,

| **PELTON GRAHAM LLC** | **FROST & MILLER, LLP** |
|---|---|
| By: /s/ *Brent E. Pelton* | By: /s/ *Kenneth N. Miller* |
| Brent E. Pelton | Kenneth N. Miller |
| Taylor B. Graham | 260 Madison Avenue, 16th Floor |
| 111 Broadway, Suite 1503 | New York, NY 10016 |
| New York, NY 10006 | Telephone: (646) 597-6274 |
| Telephone: (212) 385-9700 | Facsimile: (212) 448-0066 |
| Facsimile: (212) 385-0800 | |
| *Attorneys for Plaintiffs* | *Attorneys for Defendants* |